## Barr *versus* Greenawalt.

1. A surety having no defence of his own can set up none of which his principal could not avail himself.

2. A note was given to a married woman by a firm of which her husband was a member with G. as surety: in a suit by her against G. or against the firm, if the defendants *could* set up want of consideration or fraud, the burthen was on them.

3. A promissor or obligor in an instrument to a wife, reciting a consideration, does not sustain to her the relation which the creditors of the husband or representatives of his estate sustain.

4. The promissor admits himself to be indebted to *her* and not to her husband, and he cannot set up fraud between the wife and himself.

5. In a suit against the surety of a firm on a note to the wife of one partner, the defendant gave evidence that on the date of the note the husband had deposited to the credit of the firm a sum from his own means about equal to that for which the note was given. The wife might show that the husband was indebted to her in an equal or greater amount from her separate estate.

6. The wife had given evidence that she had about that amount of separate estate nine years before the date of the note. She might prove that a witness at that time saw in the possession of the wife a note for a similar amount with the signature of the husband, and that he then admitted it was his wife's money.

May 11th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Franklin county :* No. 67, to May Term 1869.

This was an action of assumpsit by John W. Barr and Christiana M. Barr his wife in her right against David Greenawalt; the writ issued August 28th 1867. The cause of action was the following note:

"Sixty days after date we, or either of us, promise to pay to C. M. Barr or order the sum of twenty-two hundred and seventy-five dollars, value received, with interest from date.

"$2275.                              GREENAWALT & BARR.
"April 8th 1864.                     DAVID GREENAWALT."

The case was tried, February 6th 1869, before Rowe, J. The note having been given in evidence, the plaintiff gave evidence by J. F. Miller that as executor of her father's estate he paid to Mrs. Barr $1900 in 1855, she being then a married woman. Mary Miller, the widow of the plaintiff's father, testified that she saw him give the plaintiff about $260. Plaintiff then offered to prove by the witness, that after plaintiff had received her portion of her father's estate, the witness was at the plaintiff's residence in 1855, when plaintiff showed her a note signed by J. W. Barr, and given to the wife, for about $2200. That whilst the witness and plaintiff were in conversation, J. W. Barr came into the room and

[Barr v. Greenawalt.]

joined in the conversation, and admitted in presence of witness and the wife, that the note spoken of had been given by him to his wife for the money which he had borrowed from her, and which she had got from her father's estate.

The defendant objected to the offer; it was rejected and a bill of exceptions sealed. It was admitted that J. W. Barr was a member of the firm of Greenawalt & Barr, and had authority to borrow money for the use of the firm and give notes therefor. The plaintiff here rested.

H. C. Greenawalt, the other member of the firm, testified that the defendant, his father, signed the note as surety for the firm in the presence of the witness. Defendant gave evidence that Barr had on the date of the note received about $2200 due him on a judgment against Henry A. Greenawalt by a check from H. M. White which was deposited in bank the same day to the credit of Greenawalt & Barr. On the 1st of April 1864 the account of the firm with the bank was square. He gave in evidence the cash book of the firm kept by Barr. By entries of April 8th 1864 there appeared to have been paid out on that day in a number of charges $2200.38. The defendant then rested.

In rebuttal the plaintiff renewed the former offer; it was again rejected.

The plaintiff submitted the following points all which were negatived:—

1. It having been admitted that J. W. Barr had the right to borrow money for the firm of Greenawalt & Barr, and give the firm note therefor, and the defendant having proven that Henry Greenawalt, one of the firm, was present when the note in suit was given, it can make no difference in the plaintiffs' right to recover in this case how the members of the firm afterwards expended the money. The firm, both members being present, having acknowledged the receipt of the money from Christiana M. Barr by giving her a note therefor, she could in no way be held responsible for its appropriation after it passed out of her hands; therefore plaintiffs must have the verdict.

2. If Christiana M. Barr received from her father's estate, and from her father in his lifetime, a sum which, with interest added, is equal to, or greater than, the amount of the note in suit, this sum being her separate estate, and it being admitted by the giving of the note in suit to Christiana M. Barr, that the money was advanced by her, the presumption is, that it was the money of her separate estate; therefore plaintiffs must recover.

3. There is no evidence in the case which will justify the jury in finding, that the wife had permitted her husband to convert her estate to his own use, or that she made a gift of it, or any portion of it, to him; therefore plaintiffs are entitled to the verdict.

The court also charged: * *

[Barr *v.* Greenawalt.]

" The note of the husband's firm to the wife does not import consideration; contrary to the general rule, the consideration must be shown. Otherwise the door would be opened to enormous frauds. A partner by a stroke or two of a facile pen might thus enrich his family and ruin his firm. That the wife holds this note of her husband's firm and their surety is nothing of itself; she must show that the money which it promises to pay her was actually paid into the firm and was her own separate money. And the proof of this must be clear and full. Full and clear not only that she had sufficient money of her own, but that that same money of her own was the consideration of the note received. Evidence that she had that amount of money nine years before of her separate estate, is not such full and clear proof. We instruct you that the plaintiff cannot recover."

The verdict was for the defendant. The plaintiff took a writ of error and assigned for error; rejecting the offer of evidence, the answers to the points, and instructing the jury that the plaintiff could not recover.

*W. S. Stenger* and *F. M. Kimmell*, for plaintiff in error.—The offer was not to prove separate estate in the wife, but that in 1855 she loaned the money to her husband, and took his note for it: Townsend *v.* Maynard, 9 Wright 198.

*T. M. Gowan* and *J. McD. Sharpe*, for defendant in error.— The admissions of Barr made prior to the partnership were not evidence: Hogg *v.* Orgill, 10 Casey 347; Story on Part., § 323; Collyer on Part., § 423; Levy *v.* Cadet, 17 S. & R. 126; Whitcomb *v.* Whiting, Doug. R. 629; Houser *v.* Irvine, 3 W. & S. 345; Bell *v.* Morrison, 1 Pet. R. 351; Schoneman *v.* Fegely, 7 Barr 433; Tassey *v.* Church, 4 W. & S. 141; Coleman *v.* Fobes, 10 Harris 157; Hannay *v.* Stewart, 6 Watts 489; Lenhart *v.* Allen, 8 Casey 312; Bowers *v.* Still, 13 Wright 65; Crossgrove *v.* Himmelrich, 4 P. F. Smith 203; Porter *v.* Wilson & Kelly, 1 Harris 641; Wolle *v.* Browne, 4 Whart. 365; Drennen *v.* House & Co., 5 Wright 38; Eakman *v.* Sheaffer, 12 Id. 176. Barr's declarations were inadmissible, being *ex parte :* Stauffer *v.* Young, 3 Wright 455. This was the ordinary case of a contest between a wife and the husband's creditors, and the evidence was therefore incompetent: Gamber *v.* Gamber, 6 Harris 363; Black *v.* Nease, 1 Wright 433; Kline's Appeal, 3 Id. 463; Parvin *v.* Capewell, 9 Id. 89; Grabill *v.* Moyer, Id. 531. They referred also as to the declarations of the husband to Wesco's Appeal, 2 P. F. Smith 195; Hause *v.* Gilger, Id. 412; Bradford's Appeal, 5 Casey 513. The wife was bound to prove her ownership of the money at the date of the note: Gault *v.* Saffin, 8 Wright 307; Aurand *v.* Schaffer, 7 Id. 363; Flick *v.* Devries, 14 Id. 266; Winter *v.* Walker,

1 Id. 156; Keeney v. Good, 9 Harris 349; Rhoads v. Gordon, 2 Wright 277; Topley v. Topley, 7 Casey 329; Walker v. Reamy, 12 Id. 410; Tripner v. Abrahams, 11 Wright 220.

The opinion of the court was delivered, May 24th 1869, by

AGNEW, J.—This cause was tried under a misconception of its principles. The defendant is the mere surety of Barr & Greenawalt, and having no defence of his own, can set up none of which his principals cannot avail themselves. The note was given by Barr & Greenawalt, Henry C. Greenawalt being present when it was drawn and signed by his partner, John W. Barr, his father, David Greenawalt the defendant, becoming their surety. Henry (being released by his father) is the witness who proves these facts, and strangely enough, is neither asked nor denies in his testimony the right of his partner to give the note. Admitting, however, the right of Henry, and consequently of his surety, to set up the defence of want of consideration or fraud, clearly the burthen of the proof of this defence lay upon the defendant. The court, misled by the false analogy of a contest between a wife and creditors, or the representatives of the estate of a husband, held all the presumptions to be against the plaintiff, and even tried the case on this principle. But a promissor in a note reciting a consideration, or an obligor in a bond stands in no such relation. His promise or obligation is his own acknowledgment of his in-indebtedness to her. He thereby admits himself to be *her* debtor, not her husband's. This idea that a debtor may borrow money from a married woman and give his note or bond for it, and then deny his liability because she has no witness to prove the direct payment of the money into his hands, is so revolting to our sense of justice, that it seems strange it should be confounded with a contest between the wife and creditors of her husband or the representatives of his estate. In the former the plaintiff asks the defendant to pay merely what he has himself agreed to pay her. In the latter she sets up a claim against third parties whose right it is to have the estate of her husband applied to their just claims, and to know that the wife does not divert her husband's means from them by fraud and collusion between her and him. Not so with one who voluntarily becomes her debtor—he cannot set up fraud or collusion between the wife and himself. By the note he concedes himself to be her debtor. If he has been imposed upon, or a fraud has been practised upon him, he can show it as in any other case, but he assumes the burthen of proving it.

The note was primâ facie evidence to sustain the plaintiff's action, and the offer of evidence assigned for error was therefore unnecessary in the first instance. But it was renewed and again rejected by the court, after the defendant had given evidence that on the same day the note was dated, the husband of the plaintiff

had deposited in bank to the credit of the firm a sum of nearly equal amount coming from his private means. The defendant alleging that this money was the consideration of the note, and was the husband's and not the wife's, clearly it was the right of the wife to rebut by showing that the husband was indebted to her in an equal or greater amount for her separate estate received by him. The plaintiff had given direct and positive evidence of her possession of a separate estate in 1855, which with interest would have been much greater than the defendant's note in 1864. She then offered to prove her possession of her husband's note in 1855, for a nearly equal amount, by a witness (her mother), who saw the note and signature; and that while she and her daughter were in conversation about it, the husband came in, joined in the conversation, and admitted that the note was for his wife's money. No objection was founded on the non-production of the note, which might have been accounted for, but the objection was rested on the incompetency of this mode of proof. Clearly the offer was evidence. John W. Barr at the time was not a member of the subsequently-formed firm of Barr & Greenawalt, and the purpose was not to charge the firm by means of the acts and declarations of one not competent then to bind the partnership, but it was to prove the individual indebtedness of John W. Barr to his wife by his own note and acknowledgments, long *ante litem motam,* and long before he became a partner. Why was this not evidence that John W. Barr was in possession of his wife's money? The defendant had proved that John W. Barr had, on the same day the note in suit was given, deposited the money from his individual means to the credit of the firm, and used it in payment of firm debts. Surely, it was powerful rebutting evidence to show that John W. Barr held his wife's estate in his hands. John W. Barr, it was conceded, had authority to sign the name of the firm, both partners were present when the note was given, and Greenawalt's father became the surety; and it is conceded that the firm got the money for which the note was given. There was a full and sound consideration for the note. If the money was actually the individual property of Barr, and he was indebted to the firm, rendering it inequitable that he should recover it in his wife's name, the proof of this lay on the defence; and it was error to reject evidence tending to show that the money of the wife had gone into possession of the husband. These principles are sustained by Townsend *et al. v.* Maynard, 9 Wright 198; Grabill *v.* Moyer, Id. 531; Bachman *v.* Killinger, 5 P. F. Smith 414. The length of time transpiring between 1855 and 1864 was a matter for the jury; and as a circumstance by itself would weigh but little against the acts of her husband himself in joining in the note, and paying over the money to the firm. In a contest between a wife and the partner of her husband, who knew nothing

[Barr *v.* Greenawalt.]

of the giving of the note, and payment of the money into the partnership, and alleged collusion between the husband and wife to charge the partnership with a fraudulent debt, slight evidence might suffice to overturn the primâ facie effect of the note, but this was no such case. The whole charge and answers to the plaintiff's points are impregnated with the same misapprehension as to the presumptions on the note all being against the wife, and led to the same error as in rejecting the evidence.

The judgment is therefore reversed, and a *venire facias de novo* awarded.